The cases, today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 22-1723, United States v. Daniel Donald. At this time, would Attorney Pabian please introduce himself on the record to begin? Yes, Michael Pabian on behalf of Daniel Donald. Before I begin, may I reserve two minutes for a moment of rebuttal? You may. May it please the Court. In order to affirm Mr. Donald's convictions, this Court must hold that the government established by a preponderance of the evidence that Donald effected a knowing and intelligent waiver of his Fifth Amendment privilege against self-incrimination. As this Court has made clear, including in Judge Howard's Downs-Moses opinion, quote, the District Court must begin with the presumption that the defendant did not waive his rights. To overcome this presumption, the government had to prove that Donald acted with a full awareness of both the nature of the right being abandoned and the consequences of his decision to abandon it. The defense submits that the circumstances of this case, even focusing only on the undisputed facts, do not establish such a knowing and intelligent waiver. To the contrary, at the outset of the custodial interrogation, in response to the very first incriminating question asked, Donald put his hands up in the air and asked his three interrogators, none of this can be used against him. Can I start you just at an earlier point in the exchange and tell me what you think the significance of it is? After there was an appraisal of the Miranda right at the very beginning, your client then initiated a conversation with the police, correct? That's what the District Court found. So for purposes, you're not disputing that, correct? We're not disputing the court's finding that Mr. Donald at 13 Groton Place reinitiated some level of interaction with the officers. Now, my understanding of the case law is typically that alone would be enough to constitute an implicit waiver of the Miranda right, isn't that right? Your Honor, I don't believe that's what the case law says. The cases that the government relies on on that point are primarily Simpkins and Mejia. And those cases both involved defendants who did more than just generally ask to talk or say that they might want to talk with the authorities. They received valid warnings and then immediately thereafter began answering questions. Here, the standard, the applicable standard was set by this court in the United States to be Carpentino. And I think that that standard bears emphasis here. Quote, a suspect does not waive his Miranda rights merely by initiating investigation-related communications with law enforcement officers. Rather, quote, what is required is a clear showing of the intention, intelligently exercised, to relinquish a known and understood right. So even assuming, arguendo, contrary to what we've argued in our briefs, that Donald initiated some investigation-related discussions for purposes of Michigan v. Mosley, which I can discuss later, there still was no waiver of Miranda. According to Morris' testimony, all Donald said to him is that he wanted to, quote, help himself and would provide some unspecified information. That's not a clear showing of the intention to relinquish a known and understood right. In your view, is the significance of the fact that the government then re-described Miranda, and I know you dispute how well they did it, consistent with the notion that, objectively speaking, there wasn't a waiver just from the initiation of the conversation? Because had there been a waiver, then why are they mentioning Miranda a second time? Yes, Your Honor, and I would also point out that the government hasn't developed any argument here that a waiver occurred prior to Donald sitting in the room with interrogators. So the district court, if I'm reading its opinion, seems to have come to that conclusion. Don't you read it that way? I don't believe that that's the case, Your Honor, and I point you on that point to Addendum 15, where the district court is relying on things that happened at the custodial interrogation. When it says, the agents reminded Donald that they had Mirandized him, and you understood those rights. The video slash audio tape clearly reflects a free-flowing exchange initiated by the defendants with the agents. And I would submit to the court that I'm not aware of any precedent of this court standing for the proposition that a defendant who merely indicates a general desire to recommence discussions with investigators, thereby waives his Miranda rights without providing any further clarity. As Carpentino said, a clear intention. So you're suggesting he would have to be re-Mirandized? Your Honor, yes, that is our argument. Okay, but when they remind him he's been given Miranda warnings, and then he decides to continue the information, doesn't that reminder suffice? Because he's already, you know, they're just reminding him. We don't think it does, Your Honor, because contrary to the government's characterization, it's important to note that this was not a reminder of Donald's actual rights. It was a reminder of the facts and circumstances of the prior warning. The only time that Donald received Miranda warnings, at the beginning of the search of 13 Groton Place, he clearly and unambiguously invoked his Fifth Amendment privilege. Donald signed the Advice of Rights form only after Morris told him that doing so was not a waiver. Now later when they're at the station, Officer Morris says to Donald, quote, you signed the form saying you understood your rights. Everything's still the same. We submit that this was readily understood to mean that Donald's prior indication of his right against self-incrimination remained in place. But even if that's not the case, just so I understand your argument, suppose we treated the second Miranda reference as apprising of the Miranda rights and giving the Miranda warning at that moment. Am I right in understanding you as saying even if we understood that, given the nature of his response where he says you can't use these, that then shows he doesn't understand it. Is that the idea? Yes, Your Honor. And I'd also point out that to the extent that reminder is treated as a separate Miranda warning, it was clearly invalid because it didn't say anything about what the Supreme Court has identified as a crucial element of any Miranda warning. And that's the consequences of the statements that a defendant could go on to make. Let me also ask you, you agree the standard of review for the finding of fact by the district court, it's clear, right? For findings of fact, however, I believe the law is clear that for questions as to the knowing and intelligent waiver, that is a question of law which this court reviews de novo. But isn't the judge below making finds of fact and also making that legal determination, it's mixed in, you have to make both determinations. It is a bit of a mixed question of fact and law. But you have to determine first the facts if there's clear error and based on those facts, then you decide the question of law. Yes. Not the other way around. You have to see what the facts are first. Well, I think that's generally true. But I think that in this case, even if we take the undisputed facts, even if we take the facts as the district court found them, the government just has not met its burden of showing that Donald acted with a full awareness of the consequences of the statements he would go on to make. Now, when he asks that question, when he puts his hands in the air and says, none of this can be used against me, can it? Agent DiTullio responds, and he strongly implies that Donald's correct in his misunderstanding. He says, quote, we have the stuff, so it is what it is. This suggested that the authorities did not need to use any statements Donald would go on to make and, therefore, served only to confirm his misunderstanding. Now, Donald contends that another interrogator, Officer Morris, followed this response by flatly saying no. But, again, we rest on our briefs regarding that issue. And I think that there's no knowing and intelligent waiver here based on the undisputed circumstances, including Donald's question and the fact that, incredibly, none of these three interrogators in the room tell Donald the truth. None of them says, yes, of course your statements could be used against you. Does our case law say anything about the impact of the fact that this fellow knows his way around Miranda warnings and this isn't his first rodeo? Your Honor, I think that's a fair characterization of the record. But the totality of the circumstances standard that is used to judge a Miranda waiver does not occur in a vacuum. Donald's abstract understanding of Miranda prior to the night in question, prior to his arrival at the station, does nothing to undermine our argument that his specific interactions with these agents led him to believe that his statements would not be used against him. And as the Miranda court observed, having eschewed the clear-cut fact of simply telling Donald, yes, your statements can be used against you, the government should not now be permitted to rely on that type of speculation. Can I ask you, this is, I think, related to Judge Howard's question, and it's a bit artificial, but just for purposes of the analytics of it, let me give you this stylized hypothetical. Suppose the sequence of events is the government gives the Miranda warning, defendant says, I understand it and I'm willing to waive it. In fact, I waive it. That means you can use whatever I say. But you're now entering into a cooperation agreement with me, and in that you're not going to use the statements, right? Government says exactly what it said in the transcript here. He goes on to talk. Is there a Miranda problem in that case? So, Your Honor, I understand the hypothetical. First, I just want to point out that it's different than our case. Just start with mine, and then we can come back and see how it's different. So the fact that there's already a waiver before, and a clear waiver, unlike we have here, would suggest under the Bazanson case that perhaps Miranda is not implicated. However, to change the hypothetical slightly, had that statement been made at the outset, before there's any waiver, don't worry, we won't use any of this against you, you're cooperating. Under the government's proffered standard here, that would not, I don't believe, be a valid Miranda claim. And I think that that just shows the artificial nature of the government's argument here, because that would, of course, be directly contrary to the Miranda opinion. Okay, well, putting that point aside and taking that hypothetical, so you agree that at least in the hypothetical situation, there's not a Miranda problem? Well, I think that it would depend on the facts of what's said after. These are very fact-intensive inquiries. But under Bazanson, the fact that there was a waiver at the outset would undermine a Miranda argument. Okay, so the key thing then for your position is, when was there a waiver? And if I understand that you're saying there was not a waiver when he says, after the first Miranda warning, I'd like to talk to you, because as you read it, that's just initiating some investigative conversation. That's not enough to show that there's an actual waiver. Consistent, this is just so I get the argument, consistent with that conclusion, the government itself seems to operate as if there hasn't been a waiver because it mentions Miranda a second time. Yes, Your Honor. And then you're saying, so if the waiver occurred, it's only after the second reference to Miranda. But in that sequence, the government doesn't say the yeah, yeah, the little few words that are said right after that constitutes a new waiver. No. So the only statement that could then be the waiver begins with his question, none of this can be used against me. And so your view is, well, on this record, how could you say he clearly infected the knowing waivers? Is that the argument? Yes, Your Honor, that's correct. And I'd point out that I don't think it's an accident here that the government doesn't argue an earlier waiver, because I don't believe that's supported by any case law of this court after such an ambiguous statement of possibly wanting to help oneself out. And then if that's right, then when the government nonetheless says in their briefing that statement which you're seizing on where he seems to show he doesn't know that they can be used against him, the government says those are just about the cooperation agreement. And I take it your position is, but there's nothing in the record that tells us that's what it's about as opposed to about whether he's waiving the Miranda waiver. That's right, Your Honor. I think there's two issues there, respectfully. That argument by the government is just utterly lacking in either record support or legal support. Both the parties and the district court understood in the court below that the question implicated Miranda. I'm not aware of any authority from this court or elsewhere that a defendant's misunderstanding must be specifically related to his constitutional rights in order to support a valid Miranda claim. And on that note, I'd cite the Hart and Dohm opinions that are cited in our brief. Anything further? Thank you. Then I'll rest until rebuttal. Thank you. At this time, will Attorney Eisenstadt introduce herself on the record? Good morning. May it please the Court. Karen Eisenstadt for the government. The district court correctly found here that the question was not about Miranda. It was about this cooperation agreement that Judge Barron was referencing. There's three reasons we know that's correct. First was all the context leading up to and around this question that he asked. None of this can be used against me, can it? Based on the court's findings, Donald is, of course, no babe in the woods. He's been Mirandized. He's said more times than he can count. He gets his warnings. He's very careful not to waive her talk, which doesn't make sense if he actually thinks Miranda means he can talk without consequences. They find the hide and the drugs. He seeks out the agents and says, yes, I remember my Miranda rights. Now I want to talk. The situation has changed, and he's made a calculated decision. They put the brakes on it and says, let's do this at the station on tape, which gives him more time to think. So the government's contention. Just stop one second. Are you saying the waiver occurred when he says, yes, I understand my Miranda rights, but I want to talk? Correct. That was the first implied waiver. Because your briefing doesn't suggest that you were taking the position that the waiver occurred then. I think because there was a second implied waiver before any of this happened on the tape, we're focused, I think, more on that one. But if the police had said, sure, let's talk now, I don't think there would be a Miranda problem in terms of whether there is a waiver or not. Because having been Miranda, knowing his rights. Did the waiver occur in the government's view at the moment he said, let's talk? Correct. Correct. Because knowing his Miranda rights, he sought out the agents and said, now I want to talk. I mean, before he had been very clear he didn't want to talk. The situation had changed, and he made a decision, now I do want to talk. Why does the government then give a second Miranda warning? I think the agents were simply being conscientious. At the start of the interview, sometime had passed, they drove him to the station. He's booked. He confirms again he wants to talk, but now they're on tape, and they just remind him. I don't think that means they thought. Last question, what's the best case for you that suggests just saying let's talk constitutes a waiver of the Miranda right? You just heard your opponent say that the case law doesn't support that. His initiation of investigative-related conversation in and of itself constitutes a waiver, but you're saying it does here. Correct. So I point this court to the Mazia case where they talk about, you know, the suspect reinitiating discussions about the investigation, whether he's previously equivocally or unequivocally invoked Miranda, is routinely found to be an implicit waiver. And this is as clear-cut as it can be because we have a defendant here who's been standing there after having invoked, watching them search his apartment, hoping they're not going to find this stuff. But as soon as they find it, he sneaks them out and says I want to talk to the bald guy and indicates now I want to talk. So I think that's clear-cut implied waiver there, which he then reaffirms at the start of the interview. And that's why DiTullio then begins the interrogation with the question, you knew exactly what was in the hide, wasn't it, didn't you? So that's the sign that the government understands we have an implied waiver at this point. He indicates he'd like to proceed. Let's go. Of course he could revoke it. Leaving aside for a second the second point at which you say he waived again, so it's the first approach to law enforcement saying, okay, now I want to talk. The fact that they then change the setting of the interrogation,  I mean, on these facts since they reminded him of his Miranda rights at the start. Yes, but I didn't actually see in your briefs that you argued so much that the first one counted as the waiver. You're now saying it did. So now I've got to consider the additional facts. Okay. So we didn't argue it because, again, before he said anything that he's trying to suppress, there was a clear-cut waiver at the start of the tape when he's told, reminded of his Miranda rights, confirms he understands them, and is told, okay, if you want to talk to us, you know you can stop at any time. Just to answer Judge Howard's question, though. So if there is a change in setting, I think that's actually why they were careful to remind him of his Miranda rights again. They didn't just go in and start interrogating him because there had been a change of setting. He may have had a change of heart that I don't want to talk anymore, knowing it's going to be on tape and it's formal. Do you think it was necessary to comply with Miranda? For them to give him the reminder? Yeah, once the setting changed. Under the facts of this case? I don't think it's strictly necessary. And part of the reason – By the way, I'm not going to hold you to your answer here. So part of the reason, I think, the defendant's trying to suggest that he might have actually misunderstood what he was doing. That is established fact that he did not. The district court made an explicit factual finding that, quote, I find that Donald did not misunderstand his rights. That is, he knew that any statements made – You call that a factual finding. Isn't that de novo review? That's a mixed question of whether he made a knowing and voluntary waiver. No, this was a factual finding separate from that – We're not interested in his subjective intent, are we? The subjective intent of the – Defendant, we're not interested in that, I thought. I think we're not interested in it only because – So how can that be a factual finding, whether there was a knowing and voluntary waiver? No, I think what I'm trying to say is the reason everything hinges on whether his question was about Miranda is that he's not making a claim that he actually had any misunderstanding, which then could go to involuntariness or the other aspects of the analysis.  Even assuming he knew full well that his statements could be used against him, could there be a violation? I think in that case, everything turns on whether that question was about Miranda and the officers would have perceived it to be such, as opposed to what I think the district court – Do we review that de novo or not? The question of whether – So the question of whether – What he was asking was about Miranda is a factual finding. I mean, this is about his question and what he meant by it. The district court, first, it's a two-step process. You have to make the factual findings based on the testimony heard, and then you make – which is the de novo issue, as whether – unless those factual findings are clearly erroneous, correct? Correct, correct. And the only clear error claim he's made as to whether Morris said no or it was unintelligible, he doesn't go on to challenge the district court's alternative facto finding that even if Morris said no, he didn't understand that to be an assurance. That's clear from how he behaved subsequently. So, of course, because Morris's response was, in the best interpretation of the record for him, that he said no and was about to say, elaborate on the no, and that he's cut off by Donald who says, okay, okay, I understand, yes, okay, let's go ahead, that there was no misunderstanding. Where is the factual finding by the district court that that statement was about the cooperation agreement? So the court didn't make an explicit factual finding, and I think the reason the court didn't do that is because the defendant at that point was not contending that this question was about Miranda. Well, but that's the factual finding that's missing. That's kind of a bootstrapping argument, isn't it? No, I think the defendant's position – The question is whether he was actually making a question about Miranda, and then you say the reason that there was no express finding is because he wasn't asking about Miranda. No, I'm not making that argument. Sorry. What I'm arguing is that the reason the district court didn't see a need to make an explicit factual finding is that in the district court it wasn't contested at all. The defendant's own characterization of his claim and his question was that he was not asking about Miranda. I meant like a proffer session or something like that. Those were from his own – that was from his own mouth, and it's less than a week after that representation from the defendant to the court that the court's second order comes out relying on the understanding that the question was not about Miranda, and thus the question was then whether he actually believed he had an assurance. So is that a waiver point then that you're making? I think it would either be an instance of waiver or estoppel in that he's made a representation to the district court on which the district court quite clearly relied and then is now claiming on appeal that that very thing is reversible error. I think it's an improper argument given that his representation to the court was that he was not asking about Miranda. He was asking about a cooperation agreement. If we follow that out, then just so I'm tracking the government's argument, the waiver of Miranda occurs when he asks that question or when he says yes, yes, yes right before that? The government's contention, what I think the district court found, is that he waived his Miranda rights when he agreed to talk to the agent. But now you're back to the first waiver. No, I think again, to the extent there wasn't a first waiver, he waived again. Okay, when? When he agreed to talk to the agent. And what words are you pointing to that he used that show the waiver the second time? So it's when he is told by Agent Officer Morris, reminded about Miranda, yep, I understand that, you know if you want to talk to us, which you've already indicated to us that you'd like to several times, you can stop at any time, which is something he's supposed to be told, and then he indicates he'd like to proceed. So it was sort of a, it's not an explicit waiver, which is not what we're arguing. When you say he indicates he'd like to proceed, what words are you seizing on? Is that the question? When he says, so these can't be used against me, that's the waiver language? No, I think it's when he's told, if you want to talk to us, you can stop at any time, and he indicates, he doesn't stop. He doesn't say, I'm done, I don't want to do this. But he prefaces all of it with, you know, these can't be used against me, right? But that's not. Is there some point at which he indicates the waiver prior to that statement? I think he indicates the waiver by proceeding with the interview. I mean, he sought out a police interview. But what's the words that proceed with the interview begin with, none of this can be used against me, right? The words that started the interview was de Tullio asking him. The words that he uses. De Tullio can't waive for him. He waives. Correct. Well, those are the first things. Yes, that's his first response. That's his first response. Yes. Well, that's a kind of odd starting point for finding a waiver. I think. In your typical case, if I give you Miranda warnings and you say, okay, none of this can be used against me, right, and then start talking, we wouldn't find waiver, would we? I think that's what he's. Do you agree? I agree. I think that's exactly what he's trying to exploit here is the situation that, you know, the time-wise there is not a big gap between, you know, when he starts the interview and when he says this and the idea that. So is the linchpin to this argument for the government, if I'm getting it, in the sense that because he conceded, on your view, that that opening question was not about Miranda and then continued to talk, there's no way to understand if he's doing anything other than waiving at that point. That's the idea? Correct. And furthermore, that the district court found that whatever he was getting at there, he did not understand the response to be an assurance that his statements wouldn't be used against him. So there was, at that point, no misunderstanding whether under Miranda or otherwise. So I think those two facts put together doom his claim. I'd also like to point to the defendant. Let me ask you one question before you go into that. Let's assume we were reversed, the district court, and this evidence were going to be suppressed. Does the government still have a case or this would be dispositive? I believe the case could potentially be tried without the statements. The testimony from DeTulio that he points to about the no came in after the evidence had come in. So that was the way the case was tried at that point. Okay. Thank you. I'd also like to point the court to his testimony at the evidentiary hearing on his suppression motion where he testified he understood his Miranda rights with no caveats. At that point, he has counsel. If his claim is, I didn't understand Miranda, I thought somehow I got it backwards that day, one would expect him to have made that testimony at that point. Instead, he just testifies point blank, yes, I understood Miranda with no caveats whatsoever. Was that a question posed by his attorney or by the court? That was a question posed by the prosecutor, and he agreed with it. And when his attorney came up for redirection. There was no objection to that question or anything. No. And when his attorney came up for redirection, nothing was changed about that, no caveats were added to the response. So what the district court is seeing is a person who's really never claimed he misunderstood Miranda itself, and then stands up at the reconsideration motion hearing on his claim and tells the court, I'm in a proper session or something like that. So this is a question or phishing from a defendant who's asking for a proffer agreement precisely because he knows he's not protected under Miranda. That's why he needs it. If he thinks he's protected under Miranda, he doesn't need a proffer agreement to protect his statements. So that's the order of operations, is recognizing that Miranda leaves him exposed because he's chosen to speak, which, again, he understood because, as you can see from his own testimony, about how careful he was not to wave at the apartment, and he understood the risk. Just so I'm clear, where in the record is his representation below that that statement was about the proffer and not Miranda? That is at the very end of the joint appendix. Pages 705 to 708 at the end of the reconsideration motion is when he stands up with his counsel's acquiescence and gives his own argument on his own behalf about what his claim is. And I'd note that, although that was a centerpiece of the government's argument in its responsive brief, to date the defendant has given no alternative reading as to what he meant at that hearing when he said those things. And I think from the district court's opinion, it's clear how the court took it, which is that we're analyzing this not under Miranda but as a cooperation agreement situation. If the court has no further questions, the government will rest on its feet. I just want to button up your response to Judge Helpe. When you said the case could still be tried, I take it you were taking the view that if there was a Miranda problem here, we'd have to vacate, we couldn't just affirm? Oh, correct. It's not a harmless error argument. It's simply a practical question.   Thank you, counsel. At this time, I'd like to turn it over to Judge Helpe. At this time, if counsel for the appellant would reintroduce himself on the record to begin. Michael Pabian for Daniel Donald. Your Honors, I'd like to start by saying there was no doubt that Donald's question was about Miranda. It's not as the prosecutor referred to it as a technicality. Rather, in the words of the Supreme Court in Miranda. Before you get into that, can you just address the stop on waiver point that they're making based on what was said? I guess it's pages 705 through 708. Yes, Your Honor. I think the fundamental issue here is it doesn't matter why Donald thought that his statements wouldn't be used against him. Miranda says that the accused needs to have a full awareness of the consequences of his statements. But I'm puzzled because I thought when I gave you the hypothetical, you were in agreement with me that if I say I am waiving my Miranda rights, and now I'm talking about the proffer, there's no Miranda problem if he's confused about what the proffer could do. Well, that hypothetical assumes a valid waiver, and that's not present here. Correct. But I think what the government's saying is if your client is on record saying, when I asked the question, I was talking about the proffer, and then proceeds to be talking at length, the only way to understand him at that point is to be not, unless we say at the second, and maybe this is what your argument hinges on just so I get it, that second Miranda reference doesn't count as a warning. Your Honor, our position is that absent a waiver, it doesn't matter if the government says to him, don't worry, you're cooperating. This won't be used against you. That's still a clear facial violation of Miranda. But you yourself in the hypothetical I gave said no, that's not the case, if he received a Miranda warning and makes clear that he understands it and then continues to talk. Yes, which did not happen here. Well, the government says, and I'm still not getting an answer to this question, it did happen here if the record shows that your client said, when he asked that question, he was only talking about the cooperator agreement. May I address that very briefly? I want you to do that, plus at least the government's theory is that hinges on him having been properly given a Miranda warning, and it being fair to say that he understood what a Miranda warning is. So if you could just answer both of those parts. How can it be that if your client himself says that question is about the cooperator agreement and then I continue to talk after having received all the stuff he did about Miranda, how can there be a problem? Your Honor, first of all, I don't think that's a fair characterization of the reconsideration statement. As an initial matter, the district court never relied on that statement. It wasn't in the record at the suppression hearing. It wasn't introduced at trial. The government cites no authority for consideration of it here on appeal. They don't cite any estoppel case, for instance. Now, even accepting the statement and even taking it at face value, Donald unambiguously says in that statement, quote, I was under the impression that my statements were not going to be used against me. Now, under Miranda, it's our position that it doesn't matter why he believes that. The government hasn't established any waiver of rights prior to that. And again, the valid waiver requires both an understanding of the right but also an understanding of the consequences. And it's that latter point that we think is lacking. And now he goes on in that same statement to say, to reiterate, from his essentially along the same lines of his testimony, his specific understanding that Morris' statement, everything's still the same, meant, quote, that my previously invoked rights were the same and I could speak freely with them. So given that last quote, I think it's simply inaccurate to say that he somehow conceded that this has nothing to do with Miranda. Unless the court has any further questions, I'll rest. Thank you. That concludes our argument in this case.